UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────
THOMAS REYNOLDS,

                Petitioner,         **MEMORANDUM & ORDER**

    -against-                            99-CR-520 (NGG)

UNITED STATES OF AMERICA,

                Respondent.
─────────────────────────────────

NICHOLAS G. GARAUFIS, United States District Judge.

Thomas Reynolds brings this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255, challenging his 2004 sentence on the basis that he was not given credit for time served in state and federal custody. Reynolds also moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. For the reasons set forth below, Reynolds's § 2255 petition is DENIED, and his motion to reduce his sentence is GRANTED. As a result, Reynolds's sentence is modified to reduce the term of imprisonment from 42 years to 36 years.

## I. BACKGROUND

Thomas Reynolds was a soldier in the Bonanno crime family of La Cosa Nostra. (Gov't Opp'n (Dkt. 809) at 1-2.) In September 2000, he pleaded guilty to one count of racketeering in violation of 18 U.S.C. § 1962(c). (*Id.*) As part of his plea, he admitted to committing numerous predicate racketeering acts, including drug distribution, bank robberies and burglaries, extortion, attempted murder, and several homicides. (*Id.*; *see* Mot. to Vacate (Dkt. 798) at 5.) Judge Korman initially sentenced Reynolds to life, but Reynolds successfully moved under 28 U.S.C. § 2255 to vacate that sentence on the basis that he had been promised a guilty plea would result in something below a life sentence. (First Mot. to Vacate (*Reynolds v. United States*, 02-CV-1622 (ERK),

1

Dkt. 516).) Reynolds and the Government then entered into a second plea agreement that provided for a sentence of 36 to 42 years' imprisonment. (Plea Tr. (Dkt. 765) at 17:19-24.) Reynolds agreed not to appeal or challenge a sentence that fell within the agreed upon range. (*Id.* at 19:18-20:3.) In early 2004, Judge Korman approved the agreement and resentenced Reynolds to 42 years' imprisonment and eight years of supervised release. (Amended Judgment (Dkt. 625).)

Shortly thereafter, Reynolds wrote to the court, challenging his sentence on the basis that he "did not get credit for" several years of federal and state time served for a prior gun offense. (*See* Feb. 2, 2004 Ltr. from T. Reynolds (Dkt. 798-8).) Judge Korman ordered the Probation Department to reply to the letter. (Apr. 28, 2004 Order.) Reynolds appears to have at least received a partial response from Probation (which is not in the record). (*See* Rule 32 Mot. (Dkt. 653).) Unsatisfied with that response, Reynolds filed a *pro se* Rule 32 motion on April 29, 2004, challenging his sentence on the basis that he should have been given credit for the time served because the gun offense was "relevant conduct" under U.S.S.G. § 5G1.3. (*See id.*) The court apparently did not rule on this motion. Reynolds again moved for a retroactive application of the § 5G1.3 Guideline four years later, repeating his argument regarding state time credit. (Mot. for Modification (Dkt. 684).) The Government opposed, and Judge Korman denied the motion. (Jan. 29, 2009 Order (Dkt. 697).) In October 2016, Reynolds yet again raised concerns about receiving credit for state custody (Oct. 7, 2016 Ltr. from B. Kleinman (Dkt. 757)), which the court construed as a § 2241 petition challenging the execution of his sentence. (*See* Oct. 20, 2016 Order (Dkt. 758).) That petition was transferred to the Northern District of New York, where it was ultimately denied. *See Reynolds v. Warden of FCI Ray Brook*, No. 16-CV-1264 (TJM) (TWD), 2020 WL 918766 (N.D.N.Y. 2020), *aff'd*, 850 F. App'x 132 (2d Cir. 2021).

In March 2021, Reynolds moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Mot. to Reduce (Dkt. 793).) Five months later, he moved to vacate his sentence under 28 U.S.C. § 2255. (§ 2255 Form (Dkt. 794).) In September of that year, Reynolds's appointed counsel under the CJA filed a brief in support of the motion. (*See* Mot. to Vacate.)

## II. DISCUSSION

### A. Section 2255 Petition

The Government argues that Reynolds's § 2255 petition is procedurally barred because it was filed beyond the one-year statutory filing period and Reynolds failed to raise his claims on direct appeal. (Gov't Opp'n at 4-7.) The court agrees. Reynolds's § 2255 petition is procedurally barred because he failed to raise his claims on direct appeal.

#### 1. One-Year Statute of Limitations

18 U.S.C. § 2255 provides for a one-year period during which a federal defendant may move to collaterally attack his conviction or sentence. A district court may extend the one-year period "only if . . . rare and exceptional circumstances warrant equitably tolling the limitations period." *Green v. United States*, 260 F.3d 78, 82-83 (2d Cir. 2001).[1] "To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003). To make this showing, a "petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted and all alterations are adopted.

petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id.* Equitable tolling is granted under very limited circumstances. *Id.* at 152 ("[T]he usual problems inherent in being incarcerated do not justify equitable tolling."). Moreover, "attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period," unless "an attorney's behavior [is] so outrageous or so incompetent as to render it extraordinary." *Id.* In *Baldayaque*, the Second Circuit found rare and exceptional circumstances where an attorney failed to file a § 2255 petition after his client specifically directed him to do so, did no legal research on his client's case, gave his client incorrect advice about the law, failed to inform his client about the status of his case, and failed to adequately explain the case to his client. *See id.*

Reynolds filed this § 2255 petition in 2021, fifteen years after being resentenced in 2004. Reynolds posits that the court should toll the one-year period because he first raised his credit time argument in 2004, then again in 2008, and then again in 2016. The court apparently did not address Reynolds's 2004 motion raising the credit time argument, and that might have justified tolling the one-year period until 2008 when Reynolds raised the issue again. After all, until his 2008 motion was denied, Reynolds might have been under the impression that his motion was still outstanding. By the time the motion was addressed, neither the Government's reply to Reynolds's 2008 motion nor Judge Korman's order denying it addressed Reynolds's credit time argument, and instead focused on a different argument, which concerned an amendment to a different Guideline. Reynolds again raised the time credit argument in 2016, when his motion was construed as a § 2241 motion and transferred to the Northern District of New York. That motion was denied in 2020, on the basis that it was defective as a § 2241 motion. *See Reynolds*, 2020 WL 918766 at *3. In 2021, the Second Circuit affirmed but

4

provided that "Reynolds may still file a Section 2255 petition in the Eastern District. We imply no view as to the timeliness or merits of any such petition." *Reynolds v. Warden of FCI Raybrook*, 850 F. App'x 132, 134 (2d Cir. 2021).

The court hesitates to hold that Reynolds failed to act with "reasonable diligence" in pursuing his credit time argument over the past fifteen years, because, beginning in 2004, he has repeatedly raised the issue, and it has never been fully addressed. But the court need not reach this close question because Reynolds's § 2255 petition is barred on the independent basis that he failed to raise his claims on direct appeal.

### 2. Failure to Raise on Direct Appeal

A petitioner must assert his or her claim on direct review before raising the claim in a motion pursuant to § 2255. This requirement is discharged only if petitioner "can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is actually innocent of the crime of which he was convicted." *De Jesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998). Reynolds did not challenge his sentence on direct review nor does he assert actual innocence; thus, he must establish cause for the procedural default and actual prejudice resulting from it. To demonstrate cause, a defendant must show "some objective factor external to the defense." *Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019).

Reynolds argues that he cannot be faulted for failing to appeal his sentence because he waived his right to appeal in his plea agreement. But "a waiver of appeal provision in a plea agreement d[oes] not constitute cause for failing to take a direct appeal." *Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam) (reiterating the holding in *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995)). Because Reynolds has not established cause for failing to take a direct appeal, his § 2255 petition is procedurally barred.

3. Merits

The court proceeds to consider the merits of Reynolds's § 2255 petition—although it is procedurally barred—solely because the petition's substantive merit may be a relevant factor in determining whether a sentence reduction is justified under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Reid*, No. 05-CR-596 (ARR), 2021 WL 837321, at *5 (E.D.N.Y. Mar. 5, 2021) ("[P]urely legal injuries that could have been raised in habeas petitions or direct appeals" may nonetheless be relevant under § 3582(c)(1)(A) because "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."). Reynolds argues that his 2004 sentence violated U.S.S.G. § 5G1.3 because his time spent in state and federal custody on a prior gun offense was not taken into account. At the 2004 resentencing, Reynolds's attorney suggested that, of the three and a half years that Reynolds spent in state custody on that gun charge, he could possibly be given credit for "the last nine months," which "he had spent in federal custody." (Resentencing Tr. (Dkt. 798-6) at 12:2-13:2.) In sentencing Reynolds to 42 years, Judge Korman did not mention, on the record, the time Reynolds had served in state or federal custody for the gun offense. Reynolds suggests that § 5G1.3 required Judge Korman to consider that time served. Reynolds's argument is convincing insofar as "[t]he purpose of § 5G1.3 is to prevent double-counting of the same conduct in two separate sentences." *United States v. Lavanture*, 102 F. App'x 198, 202 (2d Cir. 2004). However, § 5G1.3, in clear terms, applies only to state terms of imprisonment that are partially "undischarged" or wholly "anticipated." U.S.S.G. § 5G1.3; *see United States v. Labeille-Soto*, 163 F.3d 93, 99 (2d Cir. 1998) ("If the defendant has completed his state prison term before the federal sentence is imposed, § 5G1.3 does not apply."). Because Reynolds's sentence for the gun offense was fully discharged in February 2000, § 5G1.3 does not

apply. (Mot. to Vacate at 11.) Nonetheless, the court notes that the purpose of § 5G1.3—to prevent double-counting—would be furthered by granting Reynolds credit for his state time served.

### B. First Step Act Petition

Reynolds also seeks a reduction in his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A). Under this Section, once a defendant has exhausted the Bureau of Prisons ("BOP") administrative procedures,[2] a district court may reduce the defendant's sentence when (1) "extraordinary and compelling reasons warrant such a reduction," (2) the court has "consider[ed] the factors set forth in section 3553(a) to the extent that they are applicable," and (3) "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Although often referred to as "compassionate release," the statute allows for any sentence reduction—up to and including immediate release—so long as that that reduction is warranted by extraordinary and compelling reasons, consistent with the applicable policy statement, and is appropriate in light of the § 3553(a) factors. *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("A district court could . . . reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place."). The burden is on the inmate to show that the circumstances are sufficiently extraordinary and compelling. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

#### 1. Extraordinary and Compelling Reasons and the Applicable Policy Statements

Congress did not define extraordinary and compelling reasons in enacting 18 U.S.C. § 3582(c)(1)(A). Instead, Congress directed

---

[2] The Government does not dispute that Reynolds has exhausted his administrative remedies.

7

the Sentencing Commission (the "Commission") to "describe what should be considered extraordinary and compelling," specifying only that rehabilitation "alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The relevant Commission policy statement can be found in Sentencing Guideline § 1B1.13. The text of the policy statement itself "add[s] only that that a sentence reduction is warranted only if the defendant is not a danger to the safety of any other person or to the community." *United States v. Torres*, 464 F. Supp. 3d 651, 659 (S.D.N.Y. 2020). However, the policy statement commentary sets forth circumstances under which extraordinary and compelling reasons exist. Consequently, the determinaton of whether there are compelling and extraordinary reasons and whether a reduction is consistent with the applicable policy statement merges into a single analysis.

The commentary provides that extraordinary and compelling reasons may be found when (1) the defendant has a terminal medical condition or because of a serious health condition from which he is not expected to recover is substantially diminished in his ability to provide self-care; (2) the defendant is at least 65 years old, has served 75% or 10 years of his sentence, and is experiencing a serious deterioration in health because of the aging process; (3) family circumstances; and (4) an extraordinary and compelling reason other than or in combination with one of the above. *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 310 (S.D.N.Y. 2020). But nothing in the "now-outdated version of Guideline § 1B1.13[] limits the district court's discretion." *Brooker*, 976 F.3d at 237. Further, even "[w]here no single factor alone may justify release, the totality of circumstances may still rise to the level of extraordinary and compelling reasons for release." *United States v. Ramirez*, 98-CR-927 (CM), 2021 WL 5233512, at *6 (S.D.N.Y. Nov. 10, 2021). "The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation *alone* shall not be considered an

extraordinary and compelling reason." *Brooker*, 976 F.3d at 237-38. Reynolds's argument for a sentence reduction is generally based on the ongoing COVID-19 pandemic, his age at the time of the crimes, and his rehabilitation.

### a. COVID-19

Reynolds first argues that he is more vulnerable to death or other complications from COVID-19 due to his age: 52 years old. (Mot. to Reduce at 2, 26.) FCI Ray Brook, where Reynolds is incarcerated, currently has four active COVID-19 cases, *see* BOP COVID-19 Update, https://www.bop.gov/coronavirus, and Reynolds is fully vaccinated and has received a booster shot. Although it is the court's understanding that Reynolds does not have a medical condition that would counsel in favor of immediate release, such as a terminal illness, the pandemic is still a relevant factor weighing in favor of a sentence reduction because "the risk of suffering severe health consequences if he contracts COVID-19, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure [Reynolds's] safety, means that the actual severity of [Reynolds's] sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing." *Rodriguez*, 492 F. Supp. 3d at 311; *see also United States v. Lora*, 16-CR-44 (KPF), 2022 WL 1055749, at *5-6 (S.D.N.Y. Apr. 8, 2022) ("[P]andemic-induced conditions of confinement *may* constitute 'extraordinary and compelling' circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic."); *United States v. Valencia-Lopez*, No. 05-CR-841 (NGG), 2022 WL 198604, at *3 (E.D.N.Y. Jan. 21, 2022) (recognizing that "detention during the pandemic has been more punitive than before" or "essentially the equivalent of either time and a half or two times what would ordinarily be served").

### b. Age

Reynolds next argues that he was young at the time of his crimes, a factor that can independently weigh in favor of granting a sentence reduction. *See Brooker*, 976 F.3d at 238. Reynolds committed the crimes in his twenties and was sentenced when he was thirty. A letter from Reynolds's mother describes how an abusive and unhealthy home environment landed him on the streets at a young age. (*See* Mot. to Reduce, Ex. D (Dkt. 793-4) at ECF pp. 4-5.) But Reynolds was no "impulsive adolescent" when he committed these crimes; he committed homicides and bank robberies in his mid- and late twenties. *Cf. Ramirez*, 2021 WL 5233512, at *5 (sentence reduced where defendant was 19 when he committed murders and racketeering crimes). These crimes cannot be said to be "attributable, in some part, to limitations of the adolescent brain." *Cf. United States v. Ramsay*, 538 F. Supp. 3d 407, 424 (S.D.N.Y. 2021). Nonetheless, the court notes that Reynolds, now age 52, committed these crimes in a different era of his life. More than two decades in prison has afforded Reynolds ample opportunity to grow up and leave his young adulthood behind.

### c. Rehabilitation

Thomas Reynolds at 52 is evidently no longer the violent racketeer that he was in his twenties. To demonstrate his rehabilitation, Reynolds submitted two letters from prison officials, three letters from fellow inmates, and letters from his mother and godmother—all of which characterize Reynolds as having turned his life around in prison. Reynolds's godmother explains that "[d]uring a low point in his incarceration," around the time of his father's death in 2013, "Thomas discovered God and this new and yet abiding faith precipitated a radical change in all aspects of his being." (Ltr. from J. Hoppe (Dkt. 793-4) at ECF p. 8.) According to prison records, Reynolds has taken at least 52 courses since 2008 (*see* BOP Records (Dkt. 793-1)), and, according to his

godmother, he so excelled in the Alternatives to Violence class series that he was asked to teach several sessions of the program by the course instructors. Today, Reynolds spends his days productively, serving as the Lieutenant's and Captain's orderly, a job given to only two inmates in the prison, devoting time to Bible study, exercising, and taking educational and vocational courses.

His fellow inmates' letters laud him as a mentor and positive influence, encouraging of their sobriety, and describing him as deserving of release. "Tommy came to my rescue, he literally guided me on how not to be my own worst problem," writes one. (Ltr. from C. Kerrigan (Dkt. 793-3) at ECF p. 8.) "Because of his love and support I have been able to maintain sobriety and accomplish many things such as completing an apprenticeship program and graduating from college," writes another. (Ltr. from S. McDaniel (Dkt. 793-3) at ECF p. 6.) "Tommy is one of the few friends I have that supports my sobriety and provides me the moral and spiritual support to take responsibility for the past poor choices and to embrace hope for a future yet lived," writes another, concluding: "[H]is deeply held remorse for the person he used to be[,] [h]is faith in God, and his commitment to live a life suffused with moral integrity is real." (Ltr. from J. Kyle Kerr (Dkt. 793-3) at ECF pp. 4-5.) Officer Culley, a Senior Officer at FCI Ray Brook, described Reynolds as "respectful," obedient, "always willing to lend a hand to" officers, and "put[ting] other inmates first instead of himself." (Ltr. from R. Culley (Dkt. 793-3) at ECF p. 3.)

Finally, Reynolds's own handwritten letter brims with remorse and exhibits rehabilitation. In the letter, Reynolds states:

> To the Courts and all the people I have hurt both mentally and physically I am truly sorry for the person I was and the way I lived[.] [U]p until about 10 years ago I was sure this was my life[.] [I] lived a meaningless life that amounts to nothing. I am not proud of the person I was. I wished I could

> go back and change everything. I would like the Shemtov family to know how sorry I am, and I have tried to do that over the years hoping maybe that it would help them to know that I never wanted that to happen and like many other things in my life I cannot change but I am sorry with all of my heart.

(Ltr. from T. Reynolds (Dkt. 793-5) at ECF p. 2.) Reynolds's last disciplinary incident was more than a decade ago. (*See* Gov't Opp. at 4.) Reynolds's rehabilitation, as evidenced by these letters and prison records, weighs strongly in favor of a finding that extraordinary and compelling reasons exist to modify his sentence. *See Rodriguez*, 492 F. Supp. at 313.

Judge Korman cited "long term incapacitation of this defendant to protect the community" as among the central purposes of his imposing the maximum sentence available under Reynolds's plea agreement. (Resentencing Tr. at 20:22-25.) But, today, the BOP estimates that Reynolds's risk of recidivism is low. (BOP Recidivism Risk Assessment (Dkt. 811-2).) That Reynolds's rehabilitation mitigates this then-weighty concern—especially since he has already served a "long term" of incarceration—is another compelling reason to revisit his sentence.

### d. Related Incarceration

A final factor weighing in favor of reducing Reynolds's sentence is the fact that, as of his 2004 resentencing, Reynolds had already spent 41 months in state custody for a gun offense that was almost certainly relevant conduct to the underlying racketeering conspiracy. (*See generally* Mot. to Vacate.) As has been noted above, the purpose of § 5G1.3—"to prevent 'double-counting' of the same conduct in two separate sentences," *Lavanture*, 102 F. App'x at 202—would be furthered by reducing Reynolds's sentence. Reynolds has repeatedly raised this point: first in 2004, again in 2008, again in 2016, and most recently in his § 2255 petition addressed in the preceding sections.

*e. Conclusion*

In aggregate, these various factors—Reynolds's current age and the age at which his crimes were committed, Reynolds's evidently substantial rehabilitation, the COVID-19 pandemic and the resulting harsh conditions of custody, and the fact that Reynolds's time served in state custody on a charge related to his federal racketeering sentence was apparently not considered at his 2004 resentencing—constitute "extraordinary and compelling reasons," consistent with the applicable policy statement, that justify moderately reducing Reynolds's sentence.

2. The § 3553(a) Factors

Having found extraordinary and compelling reasons for a sentence reduction and that a sentence reduction is consistent with the applicable policy statement, the court must determine whether a sentence reduction is warranted by the § 3553(a) factors. *See Rodriguez*, 492 F. Supp. 3d at 313. The § 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," the need for the sentence "to afford adequate deterrence to criminal conduct," the need "to protect the public from further crimes of the defendant," and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §§ 3553(a) (1)-(2). A court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Reynolds seeks immediate release. In custody since 2000, Reynolds has served just over half of his 42-year sentence. Even when accounting for his good time credit, Reynolds still has approximately 17 years left on his sentence, though the BOP estimates

that he will be released on February 26, 2036. The Government argues that "a reduction by nearly half of his sentence would not adequately reflect the seriousness of the defendant's criminal conduct or the harm caused by that conduct," and that the resulting sentence would not "sufficiently protect society or afford adequate deterrence to the defendant and others who are engaged in this type of criminal conduct." (Gov't Opp'n at 14.) After considering the § 3553(a) factors, the court agrees: such an extreme reduction would not reflect the seriousness of, or provide just punishment for, Reynolds's egregious conduct, in particular his "brutal" murder of Judith Shemtov and his "systematic commission of violent offenses," including other murders, bank robberies, and drug trafficking. (Resentencing Tr. at 20:13-20:18.)

Nonetheless, the court finds that a moderate sentence reduction of six years, down to a total of 36 years' incarceration, is justified under § 3553(a). Reynolds will still serve 36 years, a number within the range agreed to by the Government and Reynolds in his 2003 plea agreement. This sentence, nearly half the average lifetime, reflects the seriousness of the offense, constitutes just punishment, and affords adequate deterrence. *See, e.g., United States v. Gonzalez*, 03-CR-1310 (LAP), 2022 WL 874996, at *4 (S.D.N.Y. 2022) (35-year sentence imposed on defendant, leader of a "long-running and lucrative drug-trafficking operation," who "use[d] firearms for robberies and murders"). Importantly, reducing Reynolds's sentence furthers the goal of "avoid[ing] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), since, if Reynolds had been resentenced for his racketeering crimes while he was still in state custody for the gun offense, Reynolds would have been entitled to credit for 41 months under § 5G1.3. *See, e.g., United States v. Zapatero*, 961 F.3d 123, 130-31 (2d Cir. 2020).

Disparity is not the only § 3553(a) factor weighing in favor of a modest sentence reduction. In considering Reynolds's "history and characteristics," his post-sentencing rehabilitation is highly relevant and weighs in favor of a reduction. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of post-sentencing rehabilitation may plainly be relevant to the history and characteristics of the defendant."); *Rodriguez*, 492 F. Supp. 3d at 314; *Torres*, 464 F. Supp. 3d at 660-62. And a 36-year sentence is certainly adequate to "protect the public" from Reynolds's future conduct; even now, the BOP estimates that Reynolds's risk of recidivism is low, and it will be even lower after additional time in prison.[3]

The court finds that a 36-year sentence is "sufficient, but not greater than necessary" to comply with the purposes of the federal sentencing factors, and this reduction is justified by extraordinary and compelling reasons, including pandemic-related conditions of confinement, Reynolds's rehabilitation, and his time served in state custody for the gun offense. *See Ramirez*, 2021 WL 5233512, at *8, *10 (reducing sentence of "twice murderer" and racketeer from 48 to 40 years in light of his "dreadful upbringing," his young age when he committed his crimes, and his rehabilitation, which included participation in drug treatment, numerous classes, self-improvement programs, and support of fellow inmates); *United States v. Qadar*, No. 00-CR-603 (ARR), 2021 WL 3087956, at *8 (E.D.N.Y. July 22, 2021) (holding that defendant's "medical conditions, the effects of continued lockdown, and [his] declining health, combined with

---

[3] In reaching this conclusion, the court relies primarily on the BOP's Recidivism Risk Assessment. The court is also persuaded by Reynolds's evident rehabilitation and clean record, his age, and the fact that Reynolds's godmother (a cousin of his) represented to the court that upon release Reynolds will move in with her and work for her retail company in rural Maine, far from New York City where his crimes were committed. (Ltr. from J. Hoppe at ECF p. 8)

15

preexisting evidence of his good character, rehabilitation, and prison accolades, constitute[d] extraordinary and compelling reasons supporting release" after he had served over twenty years of a life sentence for murder-for-hire and conspiracy to commit murder-for-hire); *Ramsay*, 538 F. Supp. at 409-10 (reducing sentence of defendant, convicted of murder in aid of racketeering, from life to thirty years).

### III. CONCLUSION

For the foregoing reasons, Reynolds's [794] Petition for Writ of Habeas Corpus is DENIED, his [793] motion for a reduction in sentence is GRANTED, and his sentence is modified to reduce the term of imprisonment from 42 years to 36 years. All other aspects of his sentence remain in full force and effect.

SO ORDERED.

Dated:   Brooklyn, New York
         May 6, 2022

                                      s/Nicholas G. Garaufis
                                      NICHOLAS G. GARAUFIS
                                      United States District Judge