UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────
UNITED STATES OF AMERICA,

          -against-

THOMAS REYNOLDS,

                Defendant.
─────────────────────────────────

MEMORANDUM & ORDER
99-CR-520-13 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Thomas Reynolds moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. (Mot. (Dkt. 823).) The Government opposes a reduction in Reynolds's sentence. (Gov't Opp. (Dkt. 825).) For the reasons set forth below, Reynolds's motion is DENIED.

## I. BACKGROUND

The court assumes the parties' familiarity with the factual background and procedural history in this matter and thus will summarize only those facts relevant to the instant motion. Thomas Reynolds was a soldier in the Bonanno crime family of La Casa Nostra. (May 6, 2022 M&O (Dkt. 812) at 1.) He pleaded guilty to one count of racketeering in September 2000. (*Id.*) One of the predicate acts to this count was distribution of cocaine and cocaine base in violation of 21 U.S.C. § 846. (*See* Presentence Investigation Report ("PSR") (Dkt. 829) at 4-6.) Reynolds was sentenced to life imprisonment in February 2001. (2/23/2001 Calendar Entry (Dkt. 509).) In 2004, Judge Korman re-sentenced Reynolds to 42 years' imprisonment after Reynolds successfully moved under 28 U.S.C. § 2255 for relief from his life sentence. (May 6, 2022 M&O at 1-2.) In May 2022, this court granted Reynolds's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), further lowering his term of incarceration to 36 years' imprisonment. (*Id.* at 1.) Approximately eight months

1

later, Reynolds again asked this court for a further sentence reduction. (*See generally* Mot.)

## II. DISCUSSION

### A. Section 404

Section 2(a) of the Fair Sentencing Act of 2010 increased the threshold quantities of crack cocaine triggering the 5-year mandatory minimum sentence from 5 grams to 28 grams and the 10-year mandatory minimum from 50 to 280 grams. *See* Pub. L. 111-200, 124 Stat. 2372, 2732 (2010) § 2 (codified at 21 U.S.C. § 841(b)(1)(A)(iii), (b)(1)(B)(iii) (2010)). The Act did not apply retroactively to defendants who had been sentenced before August 3, 2010. *Dorsey v. United States*, 567 U.S. 260, 281 (2012). Congress later passed the First Step Act of 2018. Section 404 of that Act provided that, "[a] court that imposed a sentence for a *covered offense* may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018) (emphasis added). In effect, this allowed for retroactive application of Section 2(a) of the Fair Sentencing Act.

"Under the plain language of the First Step Act . . . Section 404 bases eligibility—that is, when a court may entertain a motion for relief under the Act—on whether a sentence was imposed 'for a covered offense.'" *United States v. Holloway*, 956 F.3d 660, 664 (2d Cir. 2020).[1] A "covered offense" is defined as "a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." First Step Act § 404(a). A reduction under this Section, even when eligible, is left to the discretion of the district court. *Id.* at 404(c). A court must

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

2

therefore make the following determinations in weighing motions brought under Section 404 of the First Step Act: (1) "whether the defendant is eligible for a reduction"—*i.e.*, whether they were convicted of and sentenced for a covered offense; and (2) "whether, and to what extent, to exercise its discretion to reduce the sentence." *United States v. Moore*, 975 F.3d 84, 89 (2d Cir. 2020).[2]

As to the first requirement, the Second Circuit found in *United States v. Vaughn* that a racketeering conviction predicated on distribution of crack cocaine was not a covered offense because "[the defendant] was not convicted under any statute modified by the Fair Sentencing Act" nor was he "sentenced based upon the statutory range for Section 841(b)." 850 F. App'x 807, 808-09 (2d Cir. 2021) (Summary Order). In *United States v. Heatley*, Judge Preska similarly found that a sentence associated with a racketeering offense may be modified by the Fair Sentencing Act where the maximum penalty is set by a predicate act involving cocaine base. No. 96-CR-515 (LAP), 2021 WL 2418431, at *2 (S.D.N.Y. June 14, 2021); *see also United States v. Portee*, No. 01-CR-450 (NRB), 2021 WL 5281769, at *3 (S.D.N.Y. Nov. 12, 2021) (finding a racketeering conviction to be a covered offense because the predicate supporting the maximum sentence was distribution of crack cocaine in violation of 21 U.S.C. § 841(b)).

Here, the maximum penalty for Reynolds's racketeering conviction was not established by his cocaine base-involved offense, either at his 2001 initial sentencing or at his 2004 resentencing. The PSR from 2001 notes that Reynolds's racketeering charge was predicated on eighteen offenses, one of which, Racketeering

---

[2] The Second Circuit has held that the proper vehicle to raise a motion under the First Step Act is 18 U.S.C. § 3582(c)(1)(B), "which provides that 'a court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute.'" *Holloway*, 956 F.3d at 666 (quoting 18 U.S.C. § 3582(c)(1)(B)).

Act 4, involved distribution of cocaine and cocaine base in violation of 21 U.S.C. § 846. (*See* PSR at 4-6.) When grouped with another marijuana distribution offense, the adjusted offense level on this predicate was 43. (*Id.* at 41.) Four of the other racketeering predicates carried adjusted offense levels of 43, including:

- Racketeering Act 10B: Murder of Neil Nastro, in violation of Sections 125.25(1) and 20.00 of the New York Penal Law.
- Racketeering Act 10C: Murder of Vincent DePippo, in violation of Sections 125.25(1) and 20.00 of the New York Penal Law.
- Racketeering Acts 13A and 13C: Conspiracy to Commit Robbery and the Murder of Judith Shemtov, in violation of Sections 160.10 and 105.10 of the New York Penal Law, as well as Sections 125.25(3) and 20.00 of the New York Penal Law.
- Racketeering Acts 16A and 16B: Conspiracy to Murder and the Murder of Paul Gulino, in violation of Sections 125.25(1), 105.15, and 20.00 of the New York Penal Law.

(*Id.* at 4-5, 43-46.) All four of these predicates involved violation of Section 125.25 of the New York Penal Code—New York's second-degree murder statute. This offense is a Class A-I felony carrying a maximum sentence of life imprisonment. *See* N.Y. Penal Law § 125.25; *Id.* § 70.00(2)(a). A defendant convicted of racketeering is eligible for a life sentence when one of the predicate offenses carries a maximum penalty of life imprisonment. 18 U.S.C. § 1963(a). The life-eligibility of Reynolds's conviction was thus not dependent on Racketeering Act 4, the only predicate involving cocaine base. Each of the four second-degree murder predicates exposed Reynolds to the possibility of a life sentence.

Reynolds's life sentence was ultimately vacated, but his offense involving cocaine base did not establish the maximum penalty for his 2004 resentencing. The PSR prepared for Reynolds's 2001

4

sentencing was still in effect at resentencing three years later. (Sentencing Tr. (Dkt. 628) at 2-3.) Again, this PSR contained four other racketeering predicates carrying the same adjusted offense level (43) as Racketeering Act 4,[3] and the maximum penalty was not established by the cocaine base-involved offense. Reynolds's racketeering conviction is thus not a "covered offense" eligible for relief under Section 404 of the Fair Sentencing Act.

Even if it were, this case is not one ripe for the exercise of the court's discretion under Section 404. *See Moore*, 975 F.3d at 89. Congress enacted the Fair Sentencing Act after the Sentencing Commission issued multiple reports critical of the sentencing disparity between crack and powder cocaine. *Dorsey*, 567 U.S. at 268-69.

> The Commission issued four separate reports telling Congress that the ratio was too high and unjustified because, for example, research showed the relative harm between crack and powder cocaine less severe than 100–to–1, because sentences embodying that ratio could not achieve the Sentencing Reform Act's "uniformity" goal of treating like offenders alike, because they could not achieve the "proportionality" goal of treating different offenders (*e.g.*, major drug traffickers and low-level dealers) differently, and because the public had come to understand sentences embodying the 100–to–1 ratio as reflecting unjustified race-based differences.

*Id.* at 268. None of these concerns are reflected in Reynolds's sentence. Reynolds was a member of a major drug trafficking

---

[3] Reynolds's combined adjusted offense level was 47. (PSR at 49.) This was the sum of the greatest adjusted offense level (43) and a four-unit multi-count enhancement. (*Id.*) This four-unit enhancement would also have remained the same without consideration of Racketeering Acts 4 and 5. The total number of units would have been four, which would result in a four-unit enhancement per the sentencing guidelines in effect at the time. *See* U.S. Sent'g Guidelines Manual § 3D1.4 (U.S. Sent'g Comm'n 2000) (initial sentencing); *see also* U.S. Sent'g Guidelines Manual § 3D1.4 (U.S. Sent'g Comm'n 2003) (resentencing).

5

organization—the Bonanno crime family—and participated in the distribution of large quantities of drugs. (PSR at 8-11.) This is not a case where a small amount of crack cocaine led to an unduly excessive sentence. Reynolds's lengthy term of incarceration was also established by over a dozen racketeering predicates, including four murders. Indeed, Judge Korman highlighted the murder of Judith Shemtov, among Reynolds's broader history of violence, when imposing the maximum available penalty at his 2004 resentencing. (Sentencing Tr. at 19-20.) Reynolds's lengthy sentence was not a function of the sentencing disparity between crack and powder cocaine; it was a result of his immensely violent history as a member of the Bonanno crime family. His involvement with crack cocaine-trafficking was a fraction of his offense conduct. Exercising discretion to reduce a sentence under Section 404 would be inconsistent with the aims of the Fair Sentencing Act.

### B.   18 U.S.C. § 3582

To the extent that Reynolds moves independently for a sentence reduction pursuant to 18 U.S.C. § 3582, his motion also fails.

Under this Section, once a defendant has exhausted the Bureau of Prisons ("BOP") administrative procedures, a district court may reduce their sentence when (1) "extraordinary and compelling reasons warrant such a reduction," (2) the court has "consider[ed] the factors set forth in section 3553(a) to the extent that they are applicable," and (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Although often referred to as "compassionate release," the statute allows for any sentence reduction—up to and including immediate release so long as that that reduction is warranted by extraordinary and compelling reasons, consistent with the applicable policy statement, and is appropriate in light of the § 3553(a) factors. *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("A

district court could . . . reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place."). The burden is on the inmate to show that the circumstances are sufficiently extraordinary and compelling. *See Reynolds v. United States*, No. 99-CR-520 (NGG), 2022 WL 1444167, at *4 (E.D.N.Y. May 6, 2022). When making sentencing modifications under 18 U.S.C. § 3582(c)(1)(A)(i), courts have discretion to determine what qualifies as extraordinary and compelling reasons, with one exception: "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also Brooker*, 976 F.3d at 237-38.

In May 2022, this court granted Reynolds's compassionate release motion, reducing his sentence from 42 years to 36 years. (May 6, 2022 M&O at 1.) In doing so, the court concluded that "Reynolds's current age and the age at which his crimes were committed, [his] evidently substantial rehabilitation, the COVID-19 pandemic and the resulting harsh conditions of custody," and his time in state custody on related charges together constituted "extraordinary and compelling reasons" justifying a sentencing reduction. (*Id.* at 13.) To warrant a further reduction, Reynolds must articulate either a new basis for relief or changed circumstances since May 2022. *See United States v. Bolino*, No. 06-CR-806 (BMC), 2022 WL 2441571, at *1 (E.D.N.Y. July 5, 2022) ("There is no prohibition on serial compassionate release motions in the statute, but logic suggests that there must be a material change in circumstances from a prior motion, beyond the mere passage of time, before the Court should consider a subsequent motion[.]"); *United States v. Martinez*, No. 17-CR-456 (VM), 2021 WL 633214, at *1 (S.D.N.Y. Feb. 18, 2021) (denying a successive motion for compassionate release that "largely repeats arguments previously raised and rejected by the Court"); *United States v. Lewis*, 617 F. Supp. 3d 110, 115 (E.D.N.Y. 2022) ("Nothing of import has occurred in the three months since the

7

Court [denied a previous motion to reduce sentence] such that [the defendant's] sentence should be reduced.").

Aside from his Section 404 argument, discussed above, Reynolds relies almost exclusively on his continued rehabilitation since May 2022. (*See* Mot. at ECF 2 ("The basis for the current Motion is . . . since the Court's [May 2022] ruling, Mr. Reynolds has continued to exhibit the rehabilitative behavior that the Court referenced, but, to an even greater degree."); Reply (Dkt. 828) at 1-2 ("What Mr. Reynolds seeks now is a reduction in sentence based upon . . . his successive efforts at rehabilitation.").)[4] The court is plainly disallowed from finding rehabilitation alone to be an extraordinary and compelling reason. *See* 28 U.S.C. § 994(t). A motion for a further sentence reduction under § 3852 therefore fails.

### III. CONCLUSION

Reynolds was first sentenced for the instant offense over twenty years ago. He is scheduled to remain in custody for another six and a half years, with an expected release date of January 16, 2030.   *See* Incarcerated Lookup, New York State, https://www.bop.gov/mobile/find_inmate/byname.jsp (last accessed May 8, 2023). Reynolds has served a lengthy term of incarceration, and still has a substantial term left. He remains free to bring new motions for a sentence reduction during this

---

[4] Reynolds also briefly mentions the "dangerous" and "overly-punitive" conditions of confinement at his previous facility, FCI Ray Brook, on account of staff shortages. (Mot. at ECF 6.) The court expressly cited the COVID-related "harsh conditions of custody" as a reason for reducing Reynolds's sentence in May 2022. (May 6, 2022 M&O at 13.) This is thus not a new basis or changed circumstance since the court last reduced Reynolds's sentence.

period, which the court will consider in turn. Any motion pursuant to § 3582, must articulate a new basis for relief or changed circumstance since May 2022 to be successful.

Though rehabilitation alone is insufficient to warrant a reduction under § 3582, the court urges Reynolds to continue his efforts. Reynolds has made great strides while incarcerated. He is on the latter portion of his sentence and will be released one day. Reynolds's efforts at rehabilitation will serve him well on that day, even if they do not aid his instant motion.

SO ORDERED.

Dated:   Brooklyn, New York
         June 16, 2023

                                            s/Nicholas G. Garaufis
                                            _____
                                            NICHOLAS G. GARAUFIS
                                            United States District Judge